```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
  TRIVIDIA HEALTH, INC.,                                       :
                                                               :
                                  Petitioner,                  :
                                                               :
                  -against-                                    :       20-CV-8450 (VEC)
                                                               :
  NIPRO CORPORATION,                                           :       ORDER
                                                               :
                                  Respondent.                  :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/21

VALERIE CAPRONI, United States District Judge:

On September 18, 2020, after an arbitration proceeding that spanned three years, an arbitral tribunal of the International Chamber of Commerce ("ICC") issued a Final Award determining that Respondent Nipro Corporation ("Nipro") had breached an agreement with Petitioner Trividia Health, Inc. ("Trividia"), and awarding Petitioner, taking into account the interest that has since accrued, $21,668,302.30 in damages and legal costs. McCawley Decl., Ex. A, Dkt. 2-1; Pet. ¶ 22, Dkt. 1. On October 9, 2020, Trividia moved to confirm the non-domestic arbitration award. *See generally* Pet., Dkt. 1. Nipro opposes the motion. *See generally* Resp. Opp., Dkt. 19. For the following reasons, Trividia's petition is GRANTED, and the arbitration award is confirmed.

## BACKGROUND

Trividia, a U.S.-based manufacturer of blood glucose monitoring systems and accessories, and Nipro, a Japanese corporation that distributes such system and accessories, entered into an International Distribution Agreement ("IDA") on October 27, 2015. The IDA

included an arbitration clause.[1]  *See* Pet. ¶¶ 1–2, 6–7.  The IDA required Nipro to purchase from Trividia minimum quantities of blood glucose meter and test trip-related products for five years from the time of execution.  McCawley Decl., Ex. A at 20.  The parties disputed whether Nipro was required to make "annual minimum purchases" after the second year of the contract or whether it could terminate the contract at that point without incurring damages.  Resp. Opp. at 3.  On February 27, 2018, after the parties negotiated unsuccessfully for the annual minimum purchase amount for the third year of the contract, Trividia requested arbitration; a three-person arbitral tribunal (the "Tribunal") then began proceedings.  Namura Decl., Ex. 1, Dkt. 20-1; Pet. ¶¶ 8–9.  The Tribunal issued a Partial Final Award on October 16, 2018, determining that the agreement did not limit Trividia's remedies for breach to a right to terminate the contract.  Pet. ¶ 12.  After further briefing and hearings, the Tribunal issued a Final Award on September 18, 2020, determining that Trividia was the prevailing party; that Nipro had breached the IDA by failing to make the annual minimum purchase during the third year of the contract; and that Nipro must pay Trividia what now comes to $21,668,302.30 in damages, prejudgment interest, legal costs, and arbitration costs.  *Id.* ¶¶ 20–22.  Nipro has not yet paid the Final Award.  *Id.* ¶ 24.

## DISCUSSION

### I.  Legal Standard

Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. §§ 201 *et seq.*, a district court shall confirm a non-domestic arbitral award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.  Those grounds include: (a) the agreement is not valid under the law or a party was under some incapacity; (b)

---

[1]  Trividia was formerly Nipro Diagnostics, Inc., a subsidiary of Nipro.  After it was acquired by Shenzhen Xinnuo Health Industry Investment Ltd. it changed its name to Trividia.  Resp. Opp., Dkt. 19 at 3.

the party against whom the award is invoked was not given proper notice of the arbitration; (c) the award deals with a difference not contemplated by or not falling within the terms or scope of the submission to arbitration; (d) the composition of the arbitral authority or the procedure used does not follow the parties' agreement; or (e) the award has not yet become binding on the parties or was otherwise set aside. *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (quoting art. V(1) of the Convention).

Although the New York Convention provides the grounds for refusing to confirm a non-domestic arbitral award, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 *et seq.,* provides another opportunity for vacatur if the non-domestic award was rendered in the United States. *Toys "R" Us, Inc.*, 126 F.3d at 21.[2] Under the FAA, a district court may vacate an arbitration award if: "(1) the award was procured by corruption, fraud, or undue means; (2) the arbitrators exhibited evident partiality or corruption; (3) the arbitrators were guilty of misconduct such as refusing to hear evidence pertinent and material to the controversy or any other misbehavior that prejudiced the rights of any party; or (4) the arbitrators exceeded their powers." *Pfeffer v. Wells Fargo Advisors, LLC*, 723 F. App'x 45, 47 (2d Cir. 2018) (quoting 9 U.S.C. § 10(a)) (citation and internal quotation marks omitted). The "party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)). Moreover, an arbitration award is granted significant deference by the court, and a court should enforce an award "if there is a barely colorable justification for the outcome reached." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (citation and quotation marks omitted). A panel does not have

---

[2] The Tribunal, constituted by the ICC, held all proceedings in New York City. Pet. ¶ 5.

to explain the rationale behind its finding so long as the "ground[s] for the arbitrator's decision can be inferred from the facts of the case." *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) (citation omitted).

### II. Nipro Was Not Deprived of Due Process

Nipro asserts generally that it was deprived of due process throughout the arbitration proceeding, in contravention of Article V(1)(b) of the New York Convention, which protects a party's ability to present its case. Resp. Opp. at 1. Trividia counters that Nipro's evidence of prejudice has been taken out of context. Pet. Reply, Dkt. 28 at 1. The Court addresses each of Nipro's arguments in turn.

#### A. Procedural Order of June 27, 2018

On June 27, 2018, the Tribunal issued a procedural order to guide the trajectory of the proceeding. *See* Namura Decl., Ex. 3, Dkt. 20-3. That order broadly required the parties to inform the Tribunal of all information relevant to the case, including factual allegations, legal arguments, and evidence. *Id.* at 3. Nipro argues that Trividia "flouted" this order. Resp. Opp. at 2. In particular, although the Tribunal had been considering two tracks for the arbitration — one resolving the dispute solely as a question of law and the other considering the dispute to be as a mixed question of law and fact — and had expressly ordered the parties not to separate their legal and factual arguments, Nipro contends Trividia's submission falsely represented that there were no factual disputes between the parties. *Id.* at 4–5; Namura Decl., Ex. 5, Dkt. 20-5. Prior to the Tribunal's decision as to which track to pursue, Trividia's submission assumed the Tribunal would resolve the case solely as a question of law. *See generally* Namura Decl., Ex. 5. Nipro objected to Trividia's submission, *see* Namura Decl., Ex. 6, Dkt. 20-6, and the Tribunal expressly recognized that Trividia's submission was noncompliant with its order. Namura Decl.,

Ex. 7 ¶ 10, Dkt. 20-7.  The Tribunal then determined that the arbitration would proceed as a purely legal analysis — "Track A" — and chose to defer whether there would be any consequences for Trividia's noncompliance.  *Id.* ¶ 13.

The Tribunal's order setting the boundaries of the arbitration as purely legal, as opposed to a mixed question of law and fact, suggests that it accepted the fact that the parties each read the IDA as "unambiguous in its terms" and that, therefore, the first step in resolving their dispute would be pure contract interpretation.  *Id.* ¶¶ 2–5.  Nothing in the Tribunal's findings suggests that it improperly relied on or was improperly swayed by Trividia's noncompliant submission; that fact that the Tribunal acknowledged that Trividia's submission was noncompliant further supports the conclusion that their finding rested on proper considerations.

While Nipro argues that the Tribunal violated its due process rights when it adopted the Track A approach, Resp. Opp. at 16, the Tribunal's decision to pursue Track A does not reflect bias in favor of Trividia.  The decision was expressly based on the Tribunal's evaluation of the nature of the claim.  Namura Decl., Ex. 7 ¶¶ 2–5.  Further, even if the Tribunal had somehow improperly been swayed by Trividia's noncompliant submission, limiting the proceeding to Track A when the initial question presented was one of contract construction did not imperil Nipro's ability "to present its evidence and argument."  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997).  Despite Nipro's handwringing throughout its brief, other than asserting that proceeding on Track A meant it did not receive the purportedly "smoking gun" email[3] until after the Tribunal's Partial Award, Resp. Opp. at 6–7, it nowhere explains what evidence was excluded to Nipro's detriment by the Tribunal's choice to start with Track A.  *See*

---

[3]  As to the purportedly devastating email, Nipro fails to explain how it would have affected the Tribunal's interpretation of the IDA, which both parties asserted was unambiguous.  Namura Decl., Ex. 7 ¶ 2, Dkt. 20-7.

5

Resp. Opp. at 16–17.  As a result, Nipro's argument that the Tribunal's treatment of Trividia's submission in response to the June 27, 2018 order, and its choice to pursue Track A, deprived it of due process is without merit.

### B.  The Tribunal Had Discretion to Allow Additional Claims

Nipro next contends that the Tribunal's decision to allow Trividia to assert new claims after it had issued the Partial Final Award unfairly and irreparably prejudiced it.  Resp. Opp. at 2.

When Trividia first pursued arbitration, it sought only declaratory relief.  Namura Decl., Ex. 2 at 18, Dkt. 20-2.  Following the Partial Final Award, Trividia sought to expand the arbitration to include a trademark infringement claim and a new breach of contract claim.  *See generally* Namura Decl., Ex. 9, Dkt. 20-9.[4]  Nipro's counsel opposed the expansion, arguing that the new claims were beyond the Terms of Reference.  Namura Decl., Exs. 12–13, Dkts. 20-12–13.  The Tribunal, despite initial hesitation, allowed Trividia to pursue additional claims after determining that the new claims were related to the relief originally sought in the Term of Reference.  Namura Decl., Ex. 14, Dkt. 20-14.

The rules of the ICC permit a tribunal, in its discretion, to allow parties to submit new claims after the Terms of Reference have been issued.  ICC Rules Art. 23(4).  Thus, the Tribunal had discretion to allow Trividia to assert the new claims.  Nipro argues the Tribunal ignored the factors required to be considered when allowing new claims, including "the nature of such new claims, the stage of the arbitration and other relevant circumstances."  Resp. Opp. at 15 (quoting ICC Rules Art. 23(4)).  Nipro argues that it was inappropriate for a Tribunal, consisting of "three panelists with expertise in contract law," to consider the newly-asserted claims, which were

---

[4]   The underlying dispute led Trividia to terminate the IDA in early 2019.  *See generally* Namura Decl., Ex. 11, Dkt. 20-11.

6

"rooted in principles of tort law and highly-technical federal and state statutes." *Id.* Nipro also argues that the burden of defending against the new claims constituted "other relevant circumstances," as Nipro had only five months between the addition of the claims and the scheduled hearing before the Tribunal to prepare its defense. *Id.* This Court will refrain from questioning the qualifications of experienced arbitrators to hear different kinds of claims. And although the Court is not entirely unsympathetic to the difficulties Nipro may have experienced in litigating new issues in a short period,[5] it is unpersuaded that such difficulties rise to the level of a due process violation. Beyond the fact that the Tribunal articulated several reasons for its decision to allow the new claims to proceed before it, *see generally* Namura Decl., Ex. 14, Nipro offers only conclusory arguments why the panelists were unfit to hear these claims and does not persuasively connect the nature of the new claims to an infringement of its due process rights. The new issues were not "wholly unrelated," Resp. Opp. at 15, but were a natural outgrowth of the existing dispute over the requirements of the IDA. The Tribunal also heard Nipro's objections and reaffirmed its decision after doing so. Namura Decl., Ex. 17, Dkt. 20-17.

In short, the argument that the Tribunal's exercise of its discretion to allow an enlargement of the claims being considered violated Nipro's due process rights is without merit.

### C.  The Tribunal Did Not Ignore the Language of the IDA

Finally, Nipro argues that the Tribunal ignored Article 2.9 of the IDA, which Nipro believes "curtails" remedies related to damages. Resp. Opp. at 2. Nipro contends the Tribunal failed to address the parties' arguments regarding that provision and that the nature of discovery

---

[5] While not *entirely* unsympathetic, the Court notes that Nipro was represented during the arbitration (and now) by Reed Smith LLP. According to the National Law Journal and The American Lawyer, Reed Smith has more than 1500 attorneys and is among the 50 largest law firms in the United States.

prevented Nipro from supporting its position regarding the correct construction of the contract. *Id.* at 17.

Article 2.9 of the IDA provides: "Neither party shall be liable to the other for damages, indemnities, compensation, or any other payment of any kind by reason of the expiration or termination of this Agreement for any reason, but such termination shall be without prejudice to any rights of either party arising prior to such expiration or termination."  McCawley Decl., Ex. B at 4, Dkt. 2-2.  Tellingly, Nipro omitted the final clause of Article 2.9 in its briefing to the Court.  *See* Resp. Opp. at 2.  The plain text of the provision creates an almost insurmountable problem for Nipro, but beyond that, the fact that the Tribunal rejected Nipro's interpretation of the contract does not mean it deprived Nipro of due process.  By its own description of events, Nipro "carefully explained" to the Tribunal its argument regarding the proper interpretation of Article 2.9.  Resp. Opp. at 10.  As Nipro itself conceded, the panelists on the Tribunal were experts in contract law.  *Id.* at 15.  The Court sees no due process violation here, and it is not the role of the reviewing Court to vacate an award just because another outcome might have been possible and would have been more desirable from the perspective of the losing party.

## CONCLUSION

An arbitral award should only be vacated in exceptional circumstances, and this is not one of them.  For the foregoing reasons, Trividia's petition to confirm the non-domestic arbitration award is GRANTED, and the arbitration award is confirmed.

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Date: **December 10, 2021**
      **New York, New York**

                                                **VALERIE CAPRONI**
                                                **United States District Judge**